

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

November 14, 2024

**BY ECF**
Honorable Jennifer H. Rearden
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Re:    *United States v. Jose Guerrero Baez*, 23 Cr. 509 (JHR)

Dear Judge Rearden:

The Government respectfully submits this letter in advance of the November 21, 2024, sentencing of defendant Jose Guerrero Baez.  For the reasons set forth below, the Government respectfully submits that a below-Guidelines sentence of 96 months' imprisonment would be sufficient but not greater than necessary to serve the purposes of sentencing.

I.    **Offense Conduct and Procedural History**

Between on or about August 28, 2023, and on or about September 6, 2023, the defendant communicated with a confidential source working at the direction of law enforcement ("CS-1") regarding the sale of narcotics.  (Presentence Investigation Report ("PSR") ¶ 10).  The defendant and CS-1 agreed that the defendant would provide CS-1 with 60,000 pills on September 6, 2023.  (*Id.* ¶ 10).  On September 6, 2023, the defendant and CS-1 met in lower Manhattan.  (*Id.* ¶ 11).  The defendant presented CS-1 with three pills.  (*Id.* ¶ 11).  CS-1 did not take the pills from the defendant; the defendant told CS-1 that he could provide CS-1 with the remaining pills later that afternoon.  (*Id.* ¶ 11).  The defendant then entered CS-1's vehicle and, for approximately two hours, attempted to arrange for his suppliers to bring the remaining pills.  (*Id.* ¶ 11).  At approximately 4:30 p.m., the defendant told CS-1 that he would leave to pick up the remainder of the pills and that he would return to lower Manhattan with the remainder of the pills.  (*Id.* ¶ 12).  While driving to pick up the remainder of the pills, the defendant called CS-1.  (*Id.* ¶ 12).  Pablo Hernandez Rodriguez, one of the defendant's co-conspirators and a co-defendant, also participated in the call.  (*Id.* ¶ 12).  Hernandez Rodriguez told CS-1 that it would take between 48 minutes and two hours to obtain the entire order of 60,000 pills. (*Id.* ¶ 12).

At approximately 6:00 p.m., the defendant called CS-1 and told him that he was driving back to lower Manhattan with the full number of pills.  (*Id.* ¶ 13).  At approximately 6:30 p.m., a blue 2021 Chevy Silverado pickup truck (the "Truck") parked in the vicinity of where the defendant had met with CS-1 earlier in the afternoon.  (*Id.* ¶ 13).  The defendant was seated in the

front passenger seat of the Truck; Hernandez Rodriguez was seated in the driver's seat. (*Id.* ¶ 13). After the Truck parked, the defendant called CS-1 and told CS-1 that he had the pills. The defendant and Hernandez Rodriguez remained parked in the Truck for approximately an hour after the call. (*Id.* ¶ 14). At approximately 7:50 p.m., a Nissan sedan (the "Nissan") turned onto the street where the Truck was parked. (*Id.* ¶ 15). At approximately 7:55 p.m., Kevin Amaya, one of the defendant's co-defendants, arrived in a grey Toyota Camry (the "Camry") and exited the vehicle. As Amaya was exiting the Camry, the Nissan pulled up next to the vehicle. Amaya walked up to the front passenger window of the Nissan and was handed a small object that appeared to be cash. (*Id.* ¶ 15). Amaya then walked back to the Camry and retrieved a white, plastic shopping bag with green letters on it (the "White Shopping Bag") from the back seat. Amaya walked from the Camry to the Truck and handed the White Shopping Bag to the defendant. Amaya then walked away from the Truck, stood on the corner approximately one street from where the Truck was parked, and began making phone calls. (*Id.* ¶ 16). The Truck then pulled out and drove east. (*Id.* ¶ 16).

At approximately 8:10 p.m., law enforcement stopped the Truck and ordered the defendant and Hernandez Rodriguez to exit. (*Id.* ¶ 17). The defendant and Hernandez Rodriguez left both doors of the Truck open when they exited. (*Id.* ¶ 17). After the defendant and Hernandez Rodriguez exited the Truck, investigators observed a blue backpack on the floor of the passenger side of the vehicle. (*Id.* ¶ 18). The backpack was unzipped and open. Law enforcement was able to see the White Shopping Bag, which contained green, orange, and brown pills packed inside of multiple long, narrow Ziplock bags. (*Id.* ¶ 18). Law enforcement moved the White Shopping Bag and saw that the backpack also contained two black plastic bags. (*Id.* ¶ 19). These black plastic bags contained multiple long, narrow Ziplock bags filled with green, orange, and brown pills. (*Id.* ¶ 19). Together, the White Shopping Bag and black plastic bags contained approximately 50,000 pills that tested positive for methamphetamine, and which weighed approximately 8 kilograms. (*Id.* ¶ 19). The defendant, Hernandez Rodriguez, and Amaya were arrested on September 6, 2024. (*Id.* ¶ 20). During a *Mirandized*, post-arrest interview, the defendant stated that he intended to sell narcotics on the evening of his arrest and that he went to lower Manhattan on September 6, 2023, for that purpose. (*Id.* ¶ 21)

On September 8, 2023, the Honorable Valerie Figueredo authorized a complaint charging the defendant with one count of conspiring to distribute narcotics in violation of Title 21, United States Code, Section 846 ("Count One"). (ECF No. 1). On or about March 20, 2024, a grand jury sitting in this District returned an indictment charging the defendant with the same charge as in the complaint (the "Indictment"). (PSR ¶ 1; ECF No. 9).

## II.   Guilty Plea and Applicable Guidelines Range

On July 16, 2024, the defendant pleaded guilty, pursuant to a plea agreement (the "Plea Agreement") to a lesser included offense of Count One of the Indictment. (PSR ¶ 4). Count One charged the defendant with conspiring to distribute and possess with intent to distribute 500 grams and more of a mixture and substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers, in violation of Title 21, United States Code, Section 841(b)(1)(A). Pursuant to the Plea Agreement, the Government accepted a guilty plea to the lesser included of offense of conspiring with intent to distribute 50 grams and more of a mixture and substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers, in violation of Title 21, United States Code, Sections 841(b)(1)(B) and 846.   Pursuant

Hon. Jennifer H. Rearden  Page 3
November 14, 2024

to the Plea Agreement, the parties stipulated that, based on an offense level of 31 and a Criminal History Category of II, the defendant's applicable Guidelines range was 121-151 months' imprisonment with a mandatory minimum term of 60 months' imprisonment. That offense level was based on a base offense level of 34 and a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a).[1] Probation recommends a sentence of 96 months' incarceration followed by four years' supervised release.

### III.     Discussion

####     A.  Applicable Law

Following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005), the Guidelines still provide strong guidance for sentencing courts. Although *Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. *Booker*, 543 U.S. at 264. As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007).

Following that calculation, however, a sentencing judge must consider the seven factors outlined in Title 18, United States Code, Section 3553(a), when imposing a sentence. They are: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(1)-(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

- (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
- (B)  to afford adequate deterrence to criminal conduct;
- (C)  to protect the public from further crimes of the defendant; and
- (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

---

[1] Probation's Guidelines calculation in the PSR differs from that in the Plea agreement. Probation agreed that the offense level is 31. (*Id.* ¶ 38). However, Probation concluded that the defendant was in Criminal History Category III, as opposed to Criminal History Category II, because Probation calculated two additional criminal history points for the defendant's December 2018 conviction for illegally reentering the United States. (PSR ¶ 41). This conviction was not reflected in the criminal history documents and records that the Government was able to obtain pertaining to this defendant. Based on the foregoing, Probation determined that the applicable Guidelines range is 135 to 168 months' imprisonment. Although the Government does not disagree with Probation's analysis, the Government notes that it stands by the stipulated range in the Plea Agreement.

### B. The Court Should Sentence the Defendant to 96 Months' Imprisonment

In this case, a below-Guidelines sentence of 96 months' imprisonment would appropriately take into account the factors set forth in 18 U.S.C. §§ 3553(a).

A sentence of 96 months' imprisonment is needed to reflect the seriousness of the offense. Trafficking large amount of methamphetamine in the height of a crisis of overdose deaths is a serious crime that demands a serious punishment. Drug overdoses are one of the leading causes of injury or death in adults and have risen over the past several decades in the United States. *See* "Drug Overdose Deaths in the United States, 2002-2022," Centers for Disease Control, available https://www.cdc.gov/nchs/products/databriefs/db491.htm (last accessed June 17, 2024). Methamphetamine overdoses can result in death from stroke, heart attack, or multiple organ problems caused by overheating. *See* "Facts About Methamphetamine," Synthetic opioids—primarily fentanyl—are the primary driver of these overdose deaths. *See* "Facts About Fentanyl," Drug Enforcement Administration, available https://www.dea.gov/factsheets/methamphetamine (last accessed November 13, 2024).

In addition, a sentence of 96 months' imprisonment is needed for deterrence purposes and to protect the public. This is the defendant's third conviction. He has previous narcotics and immigration related offenses, as well as convictions for possessing false documents. More specifically, in October 2018, the defendant was convicted for distributing large quantities of cocaine, heroin, and fentanyl. (PSR ¶ 40). In addition, in December 2018, the defendant was convicted of illegally reentering the United States after having been removed from the country pursuant to a removal order issued by an immigration judge. (PSR ¶ 41). The defendant has been convicted on two previous occasions and has been removed from the United States. Despite this, the defendant has returned to this country—illegally—to continue to commit crimes. A substantial term of imprisonment is necessary to deter the defendant (and others) from continuing in the dangerous narcotics trade.

At the same time, this case presents significant mitigating circumstances that the Court should consider when fashioning a sentence. These mitigating factors include the extreme poverty into which the defendant was born and has lived his entire life, his beginning work at age seven, his lack of education and illiteracy, the medical conditions he currently faces, and his swift acceptance of responsibility. (PSR pgs. 27-28).

Balancing the aggravating and mitigating circumstances, the Government submits that a below-Guidelines sentence of 96 months' imprisonment would be sufficient but not greater than necessary to serve the purposes of sentencing.

Hon. Jennifer H. Rearden                                                                                              Page 5
November 14, 2024

**IV.     Conclusion**

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence of 96 months' imprisonment.[2]

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By: /s
Brandon C. Thompson
Assistant United States Attorney
(212) 637-2444

cc: Michael Arthus, Esq. (via ECF)

---

[2] In light of recent Second Circuit decisions, the Government respectfully requests that, for each special condition of supervised release that the Court intends to impose, the Court briefly state its reasons for concluding that each such special condition is "reasonably related" to at least one of the factors set forth in U.S.S.G. § 5D1.3(b). *See, e.g.*, *United States v. Sims*, 92 F.4th 115 (2d Cir. 2024) (vacating special condition and remanding for district court to provide sufficient explanation for imposition of condition); *United States v. Oliveras*, 96 F.4th 298 (2d Cir. 2024) (same); *United States v. Jimenez*, No. 22-1022, 2024 WL 1152535 (2d Cir. Mar. 18, 2024) (summary order) (same).